IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


TILLMAN LIGGINS, III,          )
                               )
                               )     12 C 4010
        Plaintiff,             )
                               )     Magistrate Judge Arlander Keys
                               )
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of         )
Social Security,               )
                               )
        Defendant.             )

## MEMORANDUM OPINION AND ORDER

This case is before the court on Tillman Liggins' motion for summary judgment. He seeks a reversal or remand of the Commissioner's decision to deny his application for a period of disability and disability insurance benefits ("DIB"). Cross motions for summary judgment are before the Court, and for the reasons set forth below, Mr. Liggins' motion is denied and the Commissioner's decision is affirmed.

## Background

On June 29, 2010, Tillman Liggins applied for DIB, alleging that he became disabled as of June 10, 2010 due to a back injury and left leg and arm numbness. (R. at 95.) Mr. Liggins' claim was denied initially and after reconsideration. (R. at 95, 103.) Mr. Liggins requested a hearing before an Administrative

Law Judge ("ALJ"), and the case was assigned to ALJ Patricia Witkowski Supergan, who held the hearing on September 14, 2011. (R. at 104, 44)

## I. **Plaintiff's Hearing Testimony**

During the hearing, Mr. Liggins testified to the following: He was born on February 16, 1969. (R. at 49.) He graduated from twelfth grade. (R. at 49.) At the time of the hearing, he was seventy-five inches tall and weighed approximately three hundred and seventy-four pounds. (R. at 49.)

With regard to work history, he worked as a security member and manager for a nightclub and an auto mechanic. (R. at 50.) While working at the nightclub, he had to stand and walk for most of the workday and be able to pick up a person. (R. at 50.) His auto mechanic job was performed as an amateur enthusiast for supplemental income. (R. at 50-51.) He spent two years working as a construction worker, which required him to perform heavy lifting, including lifting items that weighed more than fifty pounds. (R. at 51.) He had an arrangement with a friend that he could work with the local union without paying any dues. (R. at 72-73.) He also spent two years working with a friend as a television installer. (R. at 71-72.) He was paid in cash. (R. at 72.)

He had not worked since February of 2010. (R. at 50.) He was forced to stop working due to lower back pain, numbness in

his left leg, and numbness in the fingertips of both of his hands. (R. at 51-52.) The pain in his back is constant and is consistently at an eight and one half or a nine on a scale of one to ten with medication. (R. 52.) He lays down to relieve the pain in his back, but sitting, standing and walking all aggravate the pain. (R. at 52.) The numbness in his leg is a constant, numb, shooting-pain from his hip to his foot. (R. at 52-53.) He uses pain medication to try to relieve the pain in his leg. (R. at 53.) The numbness in his hands is constant and predominant in his little fingers. (R. at 53.) He can only walk for fifteen minutes, and can only sit or stand for thirty minutes. (R. at 59-60.) He lays down for most of the day. (R. at 60.) He is unable to put on his shoes or socks, and has difficulty manipulating things with his hands, but can lift a gallon of milk. (R. at 60-61.)

With regard to medication, he was using a 50 milligram fentanyl patch to help with his pain. (R. at 53-54.) He uses the patch for three days at a time. (R. at 54.) He also takes Norco, flexural, gabapentin, ibuprofen, amitriptyline, and another medication to help alleviate his constipation. (R. at 54-56.) He has also received two epidurals but they were ineffective. (R. at 56.) His physician has increased the prescribed dosage of various medications over time. (R. at 56-57.) He was also prescribed the use of a cane. (R. at 57.)

3

The medications also make him drowsy, and he falls asleep four or five times a day. (R. at 58.) His naps range from fifteen minutes to three hours in length. (R. at 58). He is not in physical therapy, as his physicians are still in the process of controlling his pain. (R. at 59.) The constant pain also makes it difficult for him to concentrate. (R. at 61.) He used to consume alcohol, smoke cigars and hookah, but stopped in June of 2010. (R. at 73-74.)

With regard to his home life, he lives in a house with his wife and two children. (R. at 62.) There are two stairs leading into the house that he avoids using by entering another way. (R. at 63.) He has to go up fifteen stairs to get into his room. (R. at 62.) He has trouble going up the stairs, and it takes him twenty to thirty minutes to go up. (R. at 63.)

He does not cook, clean, do laundry, or walk his children to the bus due to the difficulty he experiences moving about. (R. at 64-65, 67.) Additionally, he only drives about twice a week. (R. at 65.) His five year old daughter puts on his socks and his nine year old daughter helps him put on his pants. (R. at 66.) He no longer has hobbies. (R. at 67.)

## II. **Vocational Expert Testimony**

Grace Gainforte, a vocational expert ('VE'), testified at the hearing. (R. at 47.) The VE acknowledged that she had no prior contact with Mr. Liggins, and that she would advise the

ALJ if his testimony conflicted with the Dictionary of Occupational Titles. (R. at 75-76.) The VE testified that Mr. Liggins' work as a material handler for the plastics company, was a semi-skilled job, with an SVP of three and an exertion level of heavy. (R. at 78.) The DOT designation is 929.687-030. (R. at 78.) Mr. Liggins' work as a construction worker was a semi-skilled job, with an SVP of four, and an exertion level of heavy. (R. at 79.) The DOT designation is 869.664-014. (R. at 79.) Mr. Liggins' work as an automobile lubrication and servicer has an SVP of four and an exertion level of medium. (R. at 79.) The automobile lubrication and servicer DOT number is 915.687-018. (R. at 79.) Mr. Liggins' work as a lounge manager was skilled, has an SVP of six, and an exertion level of light. (R. at 79.) The lounge manager DOT number is 187.167-126. (R. at 79.) Mr. Liggins' work as a television installer has an SVP of 6 and an exertion level of medium. (R. at 79.) The television installer DOT number is 823.361-010. (R. at 79.)

The ALJ posed a hypothetical asking the VE to "assume an individual of the claimant's age, education, and work experience," who could, "perform light work . . . occasionally climb ramps and stairs but never ladders, ropes, or scaffolds," but "would need to avoid concentrated exposure to hazards." (R. at 79.) The ALJ asked if the described hypothetical person

could perform Mr. Liggins' prior work. (R. at 79.) The VE stated that the person could perform Mr. Liggins' work as a lounge manager. (R. at 79.)

The ALJ amended the hypothetical to state that the "individual could occasionally balance and stoop but never kneel, crouch, and crawl" and could "frequently reach in all directions . . . frequently handle, frequently finger, and then constantly feel with the upper extremities." (R. at 79-80.) The VE again testified that there was nothing prohibiting the hypothetical person from performing the duties of the lounge manager. (R. at 80.)

The ALJ again amended the hypothetical to restrict the person to sedentary level work. (R. at 80.) This time the VE testified that the hypothetical person would not be able to perform any of Mr. Liggins' prior work. (R. at 80.) The VE testified that the hypothetical person could, however, work as an automobile locator. This job has an exertion level of sedentary, and an SVP of three. (R. at 80-81.) The DOT number is 296.367-010. (R. at 81.) The VE testified that there are roughly 1,100 automobile locator jobs in the Chicago Metropolitan Area and roughly 11,000 in the national economy. (R. at 81.)

The VE also testified that the hypothetical person could work as a repair order clerk, which has an SVP of 3. (R. at

81.)  The repair order clerk DOT number is 221.382-022.  (R. at 81.)  There are 1,000 repair order clerk jobs in the Chicago area and 10,000 in the national economy.  (R. at 81.)

The VE testified that the hypothetical person could also work as a food and beverage industry order clerk.  (R. at 81.)  The order clerk DOT number is 209.567-014.  (R. at 81.)  The order clerk has a SVP of two.  (R. at 81.)  There are approximately 2,000 order clerk jobs in the Chicago area and 20,000 in the national economy.  (R. at 81.)  The order clerk position could be performed even if the hypothetical person were limited to unskilled work activities.  (R. at 81-82.)  The use of a cane however, would prohibit working in a manufacturing or industrial setting.  (R. at 82.)

The VE testified that another available job would be surveillance monitor, DOT number 379.367-010.  (R. at 82.)  The job is performed at the sedentary level and has an SVP of two.  (R. at 82.)  There are 3,000 jobs in the Chicago area and 30,000 in the national economy.  (R. at 82.)  The VE testified to one final applicable job, document preparer.  (R. at 82.)  The document preparer DOT number is 249.587-018.  (R. at 82.)  This job has an SVP of two and there are 1,500 jobs in the Chicago area, and 15,000 in the national economy.  (R. at 82.)

III. **Medical Evidence**

An MRI report from 6/1/10, indicated that Mr. Liggins had multiple disk hydrations and protrusions. (R. at 469.) On 1/13/11, Dr. Osafo completed a questionnaire presented by Mr. Liggins' attorney and indicated that Mr. Liggins could ambulate normally. (R. at 467-68.)

By 6/6/11, Mr. Liggins had an active problems list which included paresthesias/ numbness, morbid obesity, wellness examination, folic acid deficiency, hyperlipidemia, joint pain in multiple locations, lower back pain, lumbosacral plexus lesion, lumbosacral radiculitis, bronchial plexus lesion, pain in limb, and epigastric abdominal pain. (R. at 494-95.) His past medical history included morbid obesity, borderline hyperlipidemia, folic acid deficiency, and chronic back pain. (R. at 495.) Mr. Liggins also suffered from moderate obstructive sleep apnea, restless leg syndrome, and degenerative disk disease. (R. at 448, 451, 514.) He received an epidural, but only obtained a limited amount of relief. He did not participate in physical therapy. (R. at 458.)

IV. **Agency Filings**

On 8/23/10, in an RFC assessment, a non-examining agency physician reported that Mr. Liggins could occasionally lift twenty pounds and frequently lift ten pounds. (R. at 360-61.) The agency physician also determined that Mr. Liggins could

either sit or stand for six hours of every eight hour work day with normal breaks. (R. at 361.) The agency physician determined that Mr. Liggins would have certain occasional postural limitations, including, using stairs, ladders, ropes, scaffolds, or stooping and crouching. (R. at 361.) The agency physician found that Mr. Liggins had no communicative, visual or manipulative limitations. (R. at 363-64.) The agency physician determined that Mr. Liggins' statements were only partially credible. (R. at 367.) An Illinois Request for Medical Advise form was filled out by Dr. Richard Bilinsky on 12/2/10. (R. at 464, 466.) Dr. Bilinsky determined that Mr. Liggins' medical condition had not significantly changed, and that the initial assessment was adequate. (R. at 466.)

Mr. Liggins completed a work history report for the SSA. (R. at 251.) Mr. Liggins reported that he had worked as a night club manager (8/87-95), construction worker (2/98-7/01), worker at a plastics company (8/03-11/03), night club security manager (9/03-9/04), and an automotive mechanic (11/07-2/10.) (R. at 251.) Mr. Liggins reported that, as a night club manager, he would supervise others, count money and open the club. (R. at 256.) Mr. Liggins reported that, as a construction worker, he had to lift and move heavy materials and clean. (R. at 255.) Mr. Liggins reported that, as a plastics worker, he had to lift, open and carry bags, and load and clean machines. (R. at 254.)

Mr. Liggins reported that, as a night club security manager, he would supervise twenty-six people, made schedules, talked to people, and attend a weekly meeting. (R. at 253.) Mr. Liggins reported that, as an automotive mechanic, he would work on cars and perform some lifting. (R. at 252.)

On 7/28/10, Mr. Liggins completed a daily living report. (R. at 250.) Mr. Liggins reported that he could not walk long distances, and had difficulty bending over. (R. at 240.) He reported numbness in his left leg, as well as hand and back pain. (R. at 240.) He also reported that he could not sit, stand or hold a tool for an extended duration. (R. at 240.) In regards to his daily routine, Mr. Liggins stated that the first thing he does after waking is take his medication. (R. at 241.) He stated that he watches television and will talk on the phone. (R. at 241.) He stated that he watches his children until his wife gets home. (R. at 241.) He stated that he will sit on the deck after dinner and then go to bed. (R. at 241.)

Mr. Liggins reported that, since he became impaired, he has difficulty dressing himself, specifically, he reported needing help to put on his socks and shoes. (R. at 241.) Mr. Liggins reported that he cannot make himself meals because of his difficulty standing and bending. (R. at 242.) He reported that he does not do chores, but does go outside daily to keep from being in bed. (R. at 242-43.) He reported that when he needs

to travel he drives a car. (R. at 243.)  However, he also reported that he cannot drive because of his medication.  (R. at 243.)  Mr. Liggins reported that he can only walk for ten to fifteen minutes, and cannot sit for two full hours.  (R. at 243, 250.)  Mr. Liggins reported that he is unable to reach overhead. (R. at 249.)

In 11/2010, Mr. Liggins completed a subsequent daily living report.  (R. at 274.)  Mr. Liggins reported that his medications make it difficult to stay awake.  (R. at 267.)  He reported that he cares for his wife and children by feeding and clothing them. (R. at 268.)  He reported that he did not prepare his own meals or cook.  (R. at 269.)  He stated that he drove and went to the store to do some of his shopping, but that he now no longer shops.  (R. at 270.)

## V.   **The ALJ's Decision**

The ALJ issued her decision on November 2, 2011, finding that, based on Mr. Liggins' application for a period of disability and disability insurance benefits, he was not disabled under 216(i) and 223(d) of the Social Security Act. (R. at 32.)  The ALJ applied the five-step sequential analysis as required by the Act, under 20 C.F.R. 404.1520(a).  At step one, the ALJ determined that Mr. Liggins had not engaged in substantial gainful activity between February 1, 2010 and March 31, 2011.  (R. at 25.)

At step two, the ALJ determined that Mr. Liggins suffered from severe impairments which included: degenerative disk disease, sleep apnea, and morbid obesity. (R. at 25.) The ALJ also noted that Mr. Liggins suffers from a folic acid deficiency, but that this does not more than minimally impair his ability to work. (R. at 26.)

At Step three, the ALJ determined that Mr. Liggins did not have an impairment that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (R. at 26.)

At Step four, the ALJ determined that Mr. Liggins was unable to perform any of his past relevant work, but had the RFC to perform sedentary work as long as he only occasionally climbed ramps and stairs, occasionally balanced or stooped, never knelt, crouched or crawled, never climbed ropes, ladders, and scaffolds, but should avoid concentrated exposure to hazards. (R. at 26.)

In making her final determination, the ALJ noted that Mr. Liggins' testimony regarding the pain and limitations of his condition were not fully credible. (R. at 27.) Specifically, the ALJ determined that there is no medical evidence that supports any claims of difficulty walking or standing. (R. at 27.) The ALJ noted that Mr. Liggins' physician counseled him to lose weight and exercise. (R. at 28.) The ALJ explained that

the clinical findings had been relatively benign.  (R. at 28.)
The ALJ noted that the record does not indicate that Mr. Liggins
needs to lie down for half of the day.  (R. at 28.)  The ALJ
also stated that Mr. Liggins was not credible as he claimed his
wife helped with most of the daily activities, yet his wife
worked six days a week.  (R. at 29.)

Further, the ALJ stated that Mr. Liggins was not
consistently employed for the prior ten years, which implied
that medical reasons were not the reasons for his unemployment.
(R. at 29.)  The ALJ also discussed that Mr. Liggins was
inconsistent when providing information, and even if not
attempting to mislead, he still may not be a reliable source of
information.  (R. at 29.)

The ALJ also explained that, when evaluating Dr. Osafo's
medical opinion, she did not give controlling weight to the
treating physician, as the opinion was based on the subjective
assertions by Mr. Liggins, vague in regards to the limiting
effects of Mr. Liggins' pain, and lacking a function-by-function
analysis.  (R. at 29-30.)

The ALJ found that the agency physicians' opinion, while
appropriate at the time, needed to be altered due to the
inclusion of additional evidence by the time of the hearing.
(R. at 30.)  Therefore, the ALJ reduced Mr. Liggins' functional
capacity level from light to sedentary.  (R. at 30.)

At step five, the ALJ determined that, based on Mr.
Liggins' age, education, work experience, RFC, and the VE's
testimony that he had transferable experience that would allow
him to find work in the regional economy. (R. at 30-31.) The
ALJ determined that Mr. Liggins would be able to work as an
automobile locator (1,100 regionally/11,000 nationally), a
repair order clerk (1,000 regionally/10,000 nationally), and an
order clerk (2,000 regionally/20,000 nationally). (R. at 31.)

Mr. Liggins requested review by the Appeals Council, but
was denied on March 19, 2012. (R. at 1.) Thus, the ALJ's
decision became the final decision of the Commissioner. Mr.
Liggins filed a complaint with the court, seeking review of the
decision. The parties consented to the jurisdiction of this
court pursuant to 28 U.S.C. § 636(c). Thereafter, cross-motions
for summary judgment were filed.

## Standard of Disability Adjudication

An individual claiming a need for DIB must prove that he
has a disability under the terms of the SSA. In determining
whether an individual is eligible for benefits, the social
security regulations require a sequential five-step analysis.
First, the ALJ must determine if the claimant is currently
employed; second, a determination must be made as to whether the
claimant has a severe impairment; third, the ALJ must determine
if the impairment meets or equals one of the impairments listed

14

by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1; fourth, the ALJ must determine the claimant's RFC, and must evaluate whether the claimant can perform his/her past relevant work, and fifth; the ALJ must decide whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). At steps one through four, the claimant bears the burden of proof; at step five, the burden shifts to the Commissioner. *Id.*

### Standard of Review

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42 U.S.C. § 405 (g); *Steele v. Barnhart*, 920 F.3d 936, 940 (7th Cir.2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In reviewing an ALJ's decision for substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering acts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir.2003)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant

is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.1990).

An ALJ must articulate her analysis by building an accurate and logical bridge from the evidence to her conclusions, so that the Court may afford the claimant meaningful review of the SSA's ultimate findings. *Steele*, 290 F.3d at 941. It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, or if the decision is insufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id.*

## Discussion

### I.  Treating Physician's Opinion

Mr. Liggins argues that the ALJ should have given controlling weight to the opinion of Mr. Liggins' treating physician. (Pl.'s Brief at 8.) Generally, an ALJ "give[s] more weight to opinions from [] treating sources." 20 C.F.R. § 404.1527(c)(2). "If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). The ALJ "will always give good reasons in [his or her] notice of determination or decision for the

weight [given to a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Herein, the ALJ did not give controlling weight to the opinion of Mr. Liggins' treating physician. (R. at 29.) The ALJ pointed out that the treating physician's analysis, that Mr. Liggins could ambulate unassisted with pain, conflicted with his report that Mr. Liggins could ambulate normally. (R. at 29, 467-68.) The ALJ's reasoning shows that the treating physician's opinion is not consistent with the rest of the record.

The Court finds the ALJ's decision to be sound, as inconsistencies between medical opinions is not something to be ignored. "'[W]hile the treating physician's opinion is important, it is not the final word on a claimant's disability.' We previously have noted, '[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (*internal citations omitted*). The ALJ found discrepancies in the medical record and rightfully decided against giving the treating physician's opinion controlling weight. Further, the ALJ determined that the treating physician's opinion was vague and lacked a function by function analysis. (R. at 29-30.) However, a finding that the plaintiff was not credible does not end the analysis.

"When [the ALJ] do[es] not give the treating source's opinion controlling weight, [the ALJ] apply[s]" various factors to "determin[e] the weight to give the opinion." 20 C.F.R. § 404.1527(c)(2). These factors include: (1) "[l]ength of the treatment relationship and the frequency of examination," "[n]ature and extent of the treatment relationship," (3) medical supportability, (4) medical consistency, (5) medical [s]pecialization, and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(2), (2)(i-ii), (3-6).

An ALJ is not required to address every issue but must "articulate some legitimate reason for [her] decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Here the ALJ did not neatly list her reasoning behind every factor, nonetheless, there is no indication that the factors were not meaningfully examined. Further, the ALJ specifically addressed the medical supportability of the treating physician's opinion when stating that they were partly based on Mr. Liggins' subjective assertions. (R. at 29.) There is no evidence that the ALJ did not do all that was necessary to properly evaluate and determine the weight to be giving to Mr. Liggins' treating physician. Therefore, the Court finds that the ALJ did not err when not giving controlling weight to the opinion of the treating physician.

## II.  **RFC Determination**

Mr. Liggins argues that the ALJ improperly determined Mr. Liggins' RFC because of a lack of medical support, understanding, and proper interpretation.  First, Mr. Liggins argues that the ALJ erred by not articulating substantial evidence to support her decision, and only making a cursory examination of the medical evidence.  (Complaint at 11, 13.) "While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  "Even if enough evidence exists in the record to support the decision, [the court] cannot uphold it if the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 788 (E.D. Wis. 2004) (*internal citations omitted*).

Here, the ALJ discussed the impact that various impairments have on Mr. Liggins' ability to work, including his sleep apnea, obesity, and back problems, as well as the lack of credibility given to Mr. Liggins' statements.  (R. at 27-29.)  The ALJ was not required to list every reason supporting the outcome, but the ALJ did give various reasons for reaching her outcome.  The ALJ discussed Mr. Liggins' lack of credibility, obesity, musculoskeletal back issues, sleep difficulties, and hand

numbness. (R. at 27, 28.). The ALJ properly articulated her reasoning by discussing the impact of Mr. Liggins' various impairments. The Court finds no indication that the ALJ was anything less than thorough in her evaluation.

Mr. Liggins also claims that, because the ALJ's opinion suggested the level of work was more limited than the agency physicians recommended, she must have been playing doctor. (Complaint at 11.) "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ's adjustment of the agency physicians' RFC shows that the ALJ was giving meaningful weight to the opinion of Mr. Liggins' treating physician, as she stated that she would give some weight to the opinion. (R. at 29.) It is no surprise that, when evaluating two inconsistent medical opinions, the most reasonable outcome would lie somewhere in the middle. This RFC adjustment suggests that the ALJ gave meaningful consideration to all medical evidence rather than just the agency physicians' opinions.

Mr. Liggins finally claims that the ALJ mischaracterized the medical evidence and fabricated medical support for her own determination. (Complaint at 12.) Specifically, Mr. Liggins claims that the ALJ improperly drew conclusions from a medical report that Mr. Liggins' condition would not continue to be a

problem.  (Pl.'s Brief at 12.)  While the court agrees than an

ALJ should not determine Mr. Liggins' specific prognosis for

every ailment, that is not what occurred here.  Rather, the

ALJ's opinion indicates that she came to her conclusion by

examining Mr. Liggins' subsequent medical records, not by trying

to determine future conditions.  (R. at 28-29.)  The ALJ did not

err when reaching her RFC determination.

### III. <u>Credibility Determination</u>

Mr. Liggins asserts that the ALJ improperly determined that

he was not entirely credible.  (Complaint at 13.)  He argues,

specifically, that the ALJ's reasoning was vague and not

supported by substantial evidence.  (Pl.'s Brief at 14.)  The

Seventh Circuit has made clear that "[w]hen evaluating

credibility, the ALJ must consider the entire case record and

give specific reasons for the weight given to the individual's

statements." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir.

2012) (*internal quotations omitted*).   "On review, we merely

examine whether the ALJ's determination was reasoned and

supported." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir.

2012) (*internal quotations omitted*).

While Mr. Liggins claims that he was more credible than the

ALJ determined, the Court finds that the ALJ adequately

supported her determination.  The ALJ noted various

inconsistencies which could raise a red flag to the critical

eye.  One concern was that Mr. Liggins was performing strenuous activity after claiming to be disabled.  (R. at 29.)  He also testified that he did not smoke, yet the contrary was recorded in a medical report.  (R. at 29.)  Further, he claimed that his wife helped him with daily living, yet she was out of the house working six days a week.  (R. at 29.)  These various issues show that what Mr. Liggins says and does are different.  It indicates that, whether purposely misleading or not, his testimony and claims may not be accurate or trustworthy.  Finally, the ALJ noted that Mr. Liggins' work history was sporadic.  (R. at 29.) The ALJ noted that "this detracts credibility from the allegation that his unemployment is due to his medical condition."  (R. at 29.)   The ALJ's concern is reasonable, as such information may indicate that Mr. Liggins' being unemployed was not based on his alleged disability.

Since "the ALJ is in the best position to determine a witness's truthfulness and forthrightness ... this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (*internal quotations and citation omitted*).  "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (*internal quotations omitted*).  The court will not second guess her

analysis in light of the substantial amount of evidence supporting her decision. Therefore, the Court finds that the ALJ did not err in making her credibility determination.

## Conclusion

For the reasons set forth above, the Court denies Mr. Liggins' motion for summary judgment [#11]. The Commissioner's decision is affirmed.

Date: December 17, 2013

E N T E R E D:

_____

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT